UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMIMON, INC., *and* AMIMON, LTD.,

                Plaintiffs,

– *against* –

SHENZHEN HOLLYLAND TECH CO. LTD *and* EC PRO VIDEO SYSTEMS INC.,

                Defendants.

**OPINION & ORDER**

20-cv-9170 (ER)

RAMOS, D.J.:

    This trade secrets action began in November 2020. Nearly four years later, it remains stalled in discovery due to the parties' failure to work collaboratively to move the case forward. "Both the Federal Rules of Civil Procedure and our Local Rules encourage cooperation among counsel to efficiently resolve discovery disputes without intervention from the court." *Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, No. 11 Civ. 2574 (CM) (JCF), 2012 WL 1123736, at *9 (S.D.N.Y. Apr. 4, 2012). Unfortunately, the parties have failed to heed that directive.

    At issue here, in the latest episode of the parties' repeated discovery skirmishes, is Amimon's motion for sanctions based on Defendants' failure to comply with the Court's discovery orders. Doc. 280. The motion is GRANTED IN PART and DENIED IN PART.

**I.    BACKGROUND**

    The Court assumes familiarity with the factual allegations and procedural history, which have been discussed in previous opinions. *Amimon, Inc. v. Shenzhen Hollyland Tech Co.*, No. 20 Civ. 9170 (ER), 2023 WL 2478159, at *1–5 (S.D.N.Y. Mar. 13, 2023); *Amimon, Inc. v. Shenzhen Hollyland Tech Co.*, No. 20 Civ. 9170 (ER), 2021 WL

5605258, at *1–2 (S.D.N.Y. Nov. 30, 2021). The relevant details are reproduced here for convenience.

### A. Factual Background

Amimon develops technology that enables wireless video streaming. *Amimon*, 2023 WL 2478159, at *1. The company's products are used in film production, news and sports broadcasting, drones, and hospital operating rooms. *Id.* Amimon develops both the hardware, such as transmitters and receivers, and the software for these products. *Id.* Amimon's software exists first as a source code—a version of the software that is written in plain text and is editable by humans. *Id.* It is this modifiable version of the software, Amimon's "MAC Source Code," that is the subject of this case. *Id.* After source code is produced, it is compiled into a binary version of the software that Amimon places in its chipsets, within transmitters and receivers. *Id.* at *2.

Amimon and Hollyland are competitors. *Id.* Hollyland is a Chinese corporation that develops and sells video technology. *Id.* EC Pro is Hollyland's U.S. distributor and exclusive service center. *Id.*

Before this lawsuit began, Amimon learned that Hollyland products for sale in the United States contained certain representations about their transmission capacities. *Id.* Amimon obtained several Hollyland products and examined their chipsets. *Id.* It discovered that a Hollyland product contained one of Amimon's chipsets. *Id.* According to Amimon, the code on the Hollyland product's chipset was almost an identical match to Amimon's code but had been modified slightly. *Id.* Amimon had never provided its chipsets or source code to Hollyland or EC Pro. *Id.* Amimon concluded that the Hollyland products contained unauthorized software derived from misappropriated MAC Source Code. *Id.* at *3.

In November 2020, Amimon brought this action against Hollyland and EC Pro for trade secret misappropriation, copyright violations, and unfair competition for

misappropriation of skills and expenditures. *Id.* at *4. Defendants filed motions to dismiss, which the Court denied in November 2021. *Id.*

### B. Discovery Disputes

The discovery process in this case has been unnecessarily prolonged and contentious. The parties have clashed at every turn, refusing to cooperate in even the simplest requests. "Counsel should know that this is an unsuitable manner in which to conduct litigation." *In re Weatherford Int'l Sec. Litig.*, No. 11 Civ. 1646 (LAK) (JCF), 2013 WL 5870329, at *1 (S.D.N.Y. Oct. 22, 2013). Federal courts "are finite resources for the resolution of legal claims, not infinitely available advisory services that can be engaged or ignored as and when it may be convenient to do so." *Sellitto-Taylor v. McLean Affiliates, Inc.*, No. 20 Civ. 00162 (CSH), 2021 WL 2530957, at *6 (D. Conn. June 21, 2021).

Amimon served its first interrogatories and requests for production on January 28, 2022. *See* Doc. 178 at 2–3. After almost a year of back-and-forth, Amimon moved to compel Defendants to provide complete responses to those requests. *Amimon*, 2023 WL 2478159, at *20. The Court granted the motion on March 13, 2023. *Id.* at *21. In doing so, the Court explained: "The record makes clear that Defendants have improperly failed to timely produce documents pursuant to the provisions of Rule 34, despite the Court's entry of a protective order that Defendants requested prior to providing complete responses." *Id.* The Court also granted Amimon's request for costs and fees associated with the motion. *Id.*

Almost one month later, Amimon asserted that Defendants were failing to comply with the Court's motion to compel order. Doc. 200. According to Amimon, Defendants were improperly redacting documents, failing to produce responsive documents, and failing to provide meaningful responses to interrogatories. *Id.* Defendants disputed each of these claims. Doc. 201. The Court held a conference on April 12, 2023, and admonished the parties to abide by the rules of discovery.

In late April 2023, Amimon learned while reviewing a new production that Hollyland manufactured products containing Amimon chipsets for other entities. Doc. 275 at 11:7–12. Amimon already knew that Hollyland manufactured its own products—including the Cosmo, Syscom, and MOMA product lines—and manufactured for another company called Ikan. Doc. 264 at 1. But the new production revealed that Hollyland also designed or manufactured products containing Amimon chipsets for additional companies, including Vaxis and Cine Gear. *Id.*

In June 2023, Amimon sought leave to move for contempt. Doc. 234.[1] Amimon explained:

> Defendants have remained steadfast in their refusal to supplement even basic responses to certain interrogatories (*e.g.*, failing to identify all products manufactured by Hollyland, including for third-parties, as requested by Interrogatory No. 1), to provide documents evidencing or sufficient to calculate Hollyland's costs to manufacture each of the offending product models, to provide information identifying offending products manufactured for third-parties, and to provide threshold financial data related to the offending products to allow [Amimon] to calculate damages from sales of the offending products—all of which documents and information were compelled by the Court's Order.

*Id.* at 3. Defendants again disagreed with Amimon's account of events, asserting that they had produced "all the documents" in their possession. Doc. 235 at 3.

The Court held a conference on July 12, 2023. Amimon stated that it needed to know "how many total products were manufactured using Amimon chipsets," as well as "the universe of companies that the defendants have been manufacturing for." Doc. 242 at 4:21–5:5. Defendants responded that they had turned over all this information, including "[t]he total number of chips that we purchased, all the sales information, . . . the profits, and the cost of the accused products to the plaintiffs." *Id.* at 5:16–21. But Amimon asserted that Defendants had provided merely "a summary of certain Hollyland

---

[1] While Amimon initially styled its request as a "motion for contempt," *see, e.g.*, Doc. 234, the motion it ultimately filed makes clear that Amimon seeks evidentiary sanctions and attorney fees pursuant to Federal Rule of Civil Procedure 37, Doc. 281 at 14.

4

sales of their Cosmo product"; they had not disclosed any products from other companies they were manufacturing for, including Ikan, Vaxis, and Cine Gear. *Id.* at 6:16–7:1. The Court directed the parties to conduct an accounting summary to have Defendants identify the documents that supported their position. *Id.* at 16:19–23.

At the same conference, Amimon stated that Defendants had declined to produce documents related to Vaxis because those sales occurred overseas. *Id.* at 18:4–9. Defendants explained that they sell products to Vaxis in China and that Vaxis then sells those products in China—not in the United States. *Id.* at 22:10–15. The Court instructed Defendants to turn over documents showing how many units Hollyland supplied to Vaxis. *Id.* at 25:20–26:2. Given the discussion, Amimon agreed to put its proposed motion for contempt on hold. *Id.* at 26:11–12.

The saga continued, however, as Defendants filed a letter motion in July 2023 to remove the MOMA Series from the case as an accused product. Doc. 244 at 1. Defendants asserted that Amimon had "failed to produce proof that the MOMA Series was or is sold in the United States." *Id.* In response, Amimon claimed that Defendants still had not provided any "documents and information related to the MOMA and Vaxis white-labeled products." Doc. 246 at 1.

The Court held another conference to address this dispute—and others—on September 6, 2023. Amimon asserted that it sought documents related to the MOMA product and that it believed the product had been sold in the United States. Doc. 253 at 7:8–14. Defendants insisted that they did not have "any information regarding MOMA sold in the United States." *Id.* at 12:23–24. Amimon reiterated its belief that the MOMA product was sold in the United States, noting that it was available for purchase online with shipping to the United States. *Id.* at 13:19–24. The Court ordered both parties to either turn over their MOMA documents or make a representation that they had none. *Id.* at 16:10–22.

5

With respect to the Vaxis documents, Amimon said it had received an affidavit from Defendants the night before the conference. *Id.* at 8:20–25. The affidavit stated that Defendants had no Vaxis documents but had manufactured 1,417 Vaxis products that were sold only in China. *Id.* at 8:20–25, 27:6–14. Defendants did not provide any documentation to support that figure. *Id.* at 27:16–21. The Court directed the parties to meet and confer regarding the Vaxis documents. *Id.* at 27:22–25.

Amimon also objected to Defendants' failure to respond to Interrogatory No. 1, "which asked for the name and model of every product they have manufactured which contain the Amimon chip sets." *Id.* at 29:25–30:6. Amimon explained that the interrogatory simply requests that Defendants "state each brand they manufacture for and then the models of that brand, which contain our chip sets." *Id.* at 33:21–22. The Court stated: "[T]o the extent I haven't already directed you to do so, [counsel for Defendants], answer that interrogatory." *Id.* at 34:7–8.

Perhaps unsurprisingly, the conference and the Court's instructions failed to resolve the parties' disputes. In October 2023, Amimon again sought leave to move for contempt. Doc. 264. Amimon asserted that Defendants had failed to comply with the Court's motion to compel order by "taking unsupportable positions as to the scope of requests to avoid providing fulsome answers, asserting unreasonable objections to narrowly tailored requests . . . , and inexplicably contending that Defendants . . . do not maintain documents in the ordinary course." *Id.* at 1.

Amimon's premotion letter cited three specific examples of Defendants' noncompliance. First, Defendants refused to identify specific Bates-labeled documents responsive to Amimon's requests and instead directed Amimon to the entirety of Defendants' production. *Id.* at 2–3. Second, Hollyland refused to produce any documents showing the quantity and type of products containing Amimon chipsets that it (a) manufactured for Vaxis, and (b) manufactured, branded, and sold under the MOMA product line. *Id.* at 3. Third, Hollyland refused to identify all entities for whom it

6

manufactured products containing Amimon chipsets, along with the make and model of each product, regardless of where the products are sold. *Id.*

Defendants responded that they "do not track profits and losses by product." Doc. 271 at 1. With respect to the Vaxis and Cine Gear products, Defendants maintained that they had no information regarding sales in the United States. *Id.* at 2. As for the MOMA product line, Defendants asserted that "[a]ll information regarding MOMA products sold in China should be in [Amimon's] possession based upon the Chinese litigation." *Id.*

The Court held yet another conference on November 16, 2023. Amimon explained that it still had received no documents concerning the quantity of MOMA products. Doc. 275 at 13:19–20. It had a declaration indicating the number of Vaxis products, but without any supporting documentation. *Id.* at 13:21–24. And Defendants continued to refuse to provide a complete answer to Interrogatory No. 1. *Id.* at 13:25–14:13.[2]

Regarding the Vaxis documents, Defendants noted that they had provided a declaration from Hollyland executive Vincent Ma. *Id.* at 15:21–16:6. According to that declaration, "[a]ny such products were sold to Vaxis in China and to my knowledge only sold in China." Doc. 250 ¶ 3. Ma stated that "Hollyland does not have documents relating to Vaxis OEM [original equipment manufacturer]." *Id.* He also asserted that "[u]nder the name Shenzhen Haoyiyuan Tech Co. LTD we solely produced 1417 . . . units to Vaxis." *Id.* ¶ 4. Defendants proffered a similar declaration concerning the MOMA documents. Doc. 275 at 16:8–12. In that declaration, Ma stated that "MOMA is only sold in China and is not to be sold outside China." Doc. 257 ¶ 8. And he asserted that "we have no documents responsive to/for United States MOMA sales. MOMA has never been sold in the United States." *Id.* ¶ 9.

---

[2] Amimon did note that it had received documents related to Cine Gear and was no longer raising that issue. Doc. 275 at 14:14–16.

Defendants therefore continued to maintain that Vaxis and MOMA products are not sold in the United States. Doc. 275 at 16:16–18:11. Amimon noted, however, that the Court had ordered Defendants to produce the Vaxis and MOMA documents regardless of whether those products were sold in the United States or not. *Id.* at 18:14–24.

Amimon also took issue with Defendants' assertion that they had no Vaxis documents. Even if Shenzhen Haoyiyuan sold the Vaxis products, Amimon argued, Ma's declaration indicated that he had access to the documents showing that 1,417 units were sold. *Id.* at 20:5–21:2. Defendants replied that "Vaxis was only sold by Haoyiyuan because Haoyiyuan has the Chinese market. Hollyland has the international market outside of China and not including China." *Id.* at 22:11–13. And Defendants asserted that Amimon "sued Shenzhen Haoyiyuan in China regarding all MOMA products, and they should have discovery of all those documents. . . . [I]t's not our place to repeat documents that they already have in their possession." *Id.* at 21:11–15.

The Court ultimately instructed Defendants:

> I said this before, turn those documents over.
>
> Well, here's the thing. They've asked for leave to file a motion to hold you in contempt. I'm going to let them file the motion, but you can avoid it. Right? This is now the third time that we're here talking about the documents, the Vaxis documents, the MOMA documents, the [Cine Gear] documents. I believe I've told you in no uncertain terms in the past you have to turn them over. I don't care where they're sold. I don't care who they're sold to. I don't care. Turn them over.

*Id.* at 22:14–23. Additionally, in response to counsel for Defendants' assertion that he did not "see the relevance," *id.* at 24:21, the Court repeated: "It's certainly relevant to damages. Absolutely it is relevant. I've found that it is relevant. I've determined that it is relevant. I've told you to turn over the documents. I'm telling you now for the third or fourth time to turn over the documents," *id.* at 24:24–25:3.

Defendants promised to "do an extensive search" and "turn over what we have." *Id.* at 22:25–23:1; *see also id.* at 25:5–6. The Court ordered Defendants to produce the

8

documents within one month and stated that Amimon could move for contempt by December 29, 2023, if necessary. *Id.* at 25:7–26:17.

On December 29, Amimon filed its motion. Doc. 280. Amimon asserts that "[d]espite the expiration of the deadline, Defendants failed to serve any supplemental answers/responses to Amimon's requests and failed to produce all responsive documents to those requests." Doc. 281 at 6–7. Instead, Defendants produced only "invoices related to Vaxis and MOMA products." *Id.* at 7. Amimon therefore requests evidentiary sanctions and attorney fees pursuant to Federal Rule of Civil Procedure 37. *Id.* at 14.

## II. LEGAL STANDARD

As the Second Circuit has explained, "[t]he extremely broad discovery permitted by the Federal Rules depends on the parties' voluntary participation." *Klipsch Grp., Inc. v. ePRO E-Com. Ltd.*, 880 F.3d 620, 631 (2d Cir. 2018). "The system functions because, in the vast majority of cases, we can rely on each side to preserve evidence and to disclose relevant information when asked (and sometimes even before then) without being forced to proceed at the point of a court order." *Id.*

Rule 37 "governs the district court's procedures for enforcing discovery orders and imposing sanctions for misconduct." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 158 (2d Cir. 2012). If a party "fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). "A predicate court order directing compliance with discovery requests, and non-compliance with that order, are required." *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, No. 15 Civ. 3533 (CM) (BCM), 2017 WL 2840279, at *9 (S.D.N.Y. June 27, 2017). But "the order disobeyed can take a variety of forms, and need not even be written." *Id.* "The party requesting sanctions has the initial burden of demonstrating that the production is insufficient." *Family Dollar*, 2012 WL 1123736, at *4.

9

Upon finding that a party has disobeyed a discovery order, the court may choose from "a range of sanctions." *Shanghai Weiyi*, 2017 WL 2840279, at *10 (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009)). Those potential sanctions include "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; [or] (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A). "Instead of or in addition to" those sanctions, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

"The purpose of these discovery sanctions is threefold: '(1) to ensure that a party will not benefit from its failure to comply; (2) to obtain compliance with the Court's orders; and (3) to deter noncompliance, both in the particular case and in litigation in general.'" *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d 345, 353–54 (S.D.N.Y. 2023) (quoting *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 319 F.R.D. 122, 126 (S.D.N.Y. 2016)). "Consistent with these purposes, any sanction imposed under Rule 37(b) must be 'just,' and its severity 'must be commensurate with the non-compliance.'" *Id.* at 354 (quoting *Karsch v. Blink Health Ltd.*, No. 17 Civ. 3880 (VM) (BCM), 2019 WL 2708125, at *12 (S.D.N.Y. June 20, 2019)).

A court crafting a remedy for a Rule 37(b) violation "should impose the least harsh sanction that will serve as an adequate remedy." *Id.* (internal quotation marks and citation omitted). Courts have recognized that "it is always preferable for issues to be adjudicated on the merits, rather than pursuant to discovery sanctions." *Id.* (citation omitted). Monetary sanctions are the "mildest" remedy for a discovery violation.

*Shanghai Weiyi*, 2017 WL 2840279, at *10.  "If monetary sanctions are not sufficient," however, "[m]ore stringent orders may be issued, including adverse inference orders, preclusion orders prohibiting the introduction of evidence on particular points, and orders deeming disputed issues determined adversely to the position of the disobedient party." *Id.* (alteration in original) (internal quotation marks and citation omitted).

In determining the appropriate sanction, courts in this Circuit consider the following factors:  "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance."  *Id.* at *11 (omission in original) (citation omitted). These four factors "are not exclusive and they need not each be resolved against the sanctioned party."  *In re Keurig*, 673 F. Supp. 3d at 354 (citation omitted).  "Prejudice to the moving party may also be a significant consideration, though not an absolute prerequisite in all circumstances."  *Shanghai Weiyi*, 2017 WL 2840279, at *11 (citation omitted).[3]

## III. DISCUSSION

Amimon moves for sanctions based on Defendants' failure to comply with the Court's orders to produce Vaxis and MOMA documents and respond to Interrogatory No. 1. Doc. 281 at 4–5. To remedy these alleged discovery violations, Amimon requests that

---

[3] Defendants' opposition brief invokes the standard for holding a party in contempt, which requires a finding that "(1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner."  *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016); *see* Doc. 283 at 6.  As noted above, Amimon's motion seeks evidentiary sanctions and attorney fees under Rule 37.  Doc. 281 at 14; *see also* Doc. 285 at 2 (explaining that Amimon "does not request the Court impose on Defendants the coercive sanction of civil contempt" (emphasis omitted)).  And other courts have recognized that Rule 37 sanctions may be appropriate even if the stricter contempt standard is not satisfied.  *See, e.g.*, *S. New England Tel. Co. v. Glob. Naps, Inc.*, No. 04 Civ. 2075 (JCH), 2006 WL 6916630, at *1–3 (D. Conn. Nov. 27, 2006) (court declined to make a finding of contempt due to lack of clear and convincing evidence but did impose sanctions under Rule 37); *cf. Fox Indus., Inc. v. Gurovich*, No. 03 Civ. 5166 (TCP) (WDW), 2005 WL 8160996, at *10 (E.D.N.Y. June 2, 2005) (holding that plaintiff had not established defendants' noncompliance "either under the clear and convincing standard for findings of contempt or under a lesser standard applied to Rule 37 violations"), *report and recommendation adopted*, 2005 WL 8160995 (E.D.N.Y. June 21, 2005).

the Court (1) designate certain facts in the amended complaint as established, and (2) award Amimon its reasonable attorney fees and costs incurred since the motion to compel order was entered in March 2023. *Id.* at 5.

### A. Vaxis and MOMA Documents

As detailed above, Vaxis and MOMA documents have been a recurring point of contention. With respect to Vaxis, the Court explicitly ordered Defendants to turn over the documents at the July 2023 conference, Doc. 242 at 25:20–26:2, and again four months later at the November 2023 conference, Doc. 275 at 22:14–23. As for MOMA, the Court likewise ordered Defendants to produce the documents at the September 2023 conference, Doc. 253 at 16:10–22, and at the November 2023 conference, Doc. 275 at 22:14–23.

Amimon argues that Defendants have "fail[ed] to provide all documents in their possession responsive to Amimon's requests." Doc. 281 at 5. Specifically, Amimon accuses Defendants of "refusing to produce any documentation whatsoever related to the development of the Vaxis and MOMA products, the marketing of these products, the functionalities of these products, costs to manufacture these products, or any communications related to these products, and instead, merely producing invoices related to the products." *Id.* According to Amimon, Defendants were "well aware that the Court's Orders to provide complete responses and produce responsive documents related to MOMA and Vaxis were not limited to merely producing invoices for those products." *Id.* at 12.

Defendants, unsurprisingly, tell a different story. They claim to have produced "all of the MOMA and Vaxis documents in their possession"—a total of 401 new documents—to Amimon on December 18, 2023. Doc. 283 at 1.[4] Defendants insist that "all pertinent information regarding . . . Hollyland's documents in China was provided to

---

[4] Amimon takes issue with this figure, asserting that "the production contains only 54 documents" with "a total of 401 *pages*." Doc. 285 at 4 n.8.

[Amimon]." *Id.* at 2. In Defendants' view, they have "fully complied with the Court Order and produced all the Vaxis and [MOMA] documentation in our possession to [Amimon] within the timeframe stated by the Court." *Id.*

Defendants also assert that Amimon has not offered "clear and convincing proof of noncompliance that these documents exist and are withheld." *Id.* at 9. While Amimon need not satisfy that high bar—which is required for a finding of civil contempt—it does have "the initial burden of demonstrating that the production is insufficient," *Family Dollar*, 2012 WL 1123736, at *4. As another court put it: "Litigants commonly suspect that they are not getting all the documents they have requested and that an adversary is holding something back. That suspicion, however, will not sustain the imposition of sanctions." *Margel v. E.G.L. Gem Lab Ltd.*, No. 04 Civ. 1514 (PAC) (HBP), 2008 WL 2224288, at *3 (S.D.N.Y. May 29, 2008).

The Court concludes that Amimon has not provided a sufficient basis to find that Defendants are "refusing" to produce the other categories of Vaxis and MOMA documents. Amimon objects to Defendants' assertion that it conducted a "reasonable search" and suggests that Defendants' efforts were limited to a search of paper documents rather than electronic materials. Doc. 285 at 4. According to Amimon, "the mere search of 'paper documents' by Defendants is clear and unequivocal evidence of non-compliance." *Id.* at 4–5. But Defendants repeatedly state in their brief that they have "produced all of the MOMA and Vaxis documents in their possession." Doc. 283 at 1; *see also id.* at 2, 6, 8, 11.

Amimon insists that Defendants' representation is "implausible and not representative of a good faith averm[ent]." Doc. 285 at 9. According to Amimon, the dates on the new documents fall into two ranges: (1) July 5, 2016, to September 1, 2017, and (2) January 21, 2020, to April 18, 2023. *Id.* This lawsuit began in late 2020. Amimon argues that "there is absolutely no universe where communications giving rise to invoices generated during this litigation and marketing materials related to these

13

products are not within Defendants' possession, custody, or control." *Id.* at 10 (emphasis omitted). But this line of reasoning, without more specific evidence, is not sufficient to satisfy Amimon's burden to show a discovery violation. *See Margel*, 2008 WL 2224288, at *3 (finding no basis for sanctions where defendants did not cite "any specific evidence impugning plaintiffs' assertions that their production is complete").

With that said, the Court recognizes that Defendants have previously equivocated on the subject of the Vaxis and MOMA documents in their possession. The Court will therefore require Defendants to represent whether they have any additional Vaxis or MOMA documents in their possession, custody, *or control*—regardless of whether they relate to products or sales in the United States or somewhere else—that have not been produced in this litigation. Defendants also must describe the search process they have undertaken to locate such documents. Defendants shall make these representations to the Court by August 8, 2024.

Furthermore, the Court finds that it should not have taken so long for Defendants to produce the Vaxis and MOMA documents. Defendants did not turn over the additional documents until December 18, 2023—after multiple conferences and the threat of sanctions. (That production itself contradicted Defendants' representation to the Court at the November 2023 conference that there were no other Vaxis or MOMA documents to produce. Doc. 275 at 16:20–22.) Accordingly, the Court will require Defendants to pay attorney fees and costs in connection with Amimon's efforts to obtain the Vaxis and MOMA documents. *See Margel*, 2008 WL 2224288, at *3–4 (court declined to impose sanctions but awarded attorney fees pursuant to Rule 37(a)(5)(A) because "plaintiffs failed to make production when they should have and compelled defendants to make several applications to the court"); *see also In re Keurig*, 673 F. Supp. 3d at 359 (finding monetary sanctions warranted where plaintiff's productions, "for whatever they were worth, arrived only after <u>seven</u> conferences with the Court, <u>four</u> motions by [defendant], and <u>four</u> extensions of time").

14

For the Vaxis documents, the Court will award Amimon reasonable attorney fees and costs incurred between July 12, 2023, and December 18, 2023. For the MOMA documents, the Court will award Amimon reasonable attorney fees and costs incurred between September 6, 2023, and December 18, 2023. Amimon shall submit its fee application by August 8, 2024. Defendants may file any objections to the fee application—limited to the reasonableness of the fees and costs—by August 15, 2024.

### B. Interrogatory No. 1.

Interrogatory No. 1 requests that Defendants "[i]dentify by name and model number all products designed, manufactured, offered for sale, or sold by Hollyland from 2014 to present which incorporate any Amimon Chipset." Doc. 168-3 at 4. At the September 2023 conference, Amimon asserted that in addition to its own products, Hollyland manufactures Ikan, Vaxis, and Cine Gear products. Doc. 253 at 30:13–31:7. Hollyland stated that it had "provided all the documentation regarding any third-party company that we made products for" and therefore had fully answered the interrogatory. *Id.* at 31:22–32:4. But Amimon argued:

> The interrogatory doesn't seek documents. It obviously seeks a complete response as to the name and model of each product that they manufacture. . . . They have that knowledge somewhere within the company, and we are requesting them to state each brand they manufacture for and then the models of that brand, which contain our chip sets.

*Id.* at 33:16–22. Amimon maintained that Defendants had failed to include Ikan, Vaxis, and Cine Gear—or any other brands Defendants manufacture for—in their interrogatory response, along with "the specific models that contain the chip sets." *Id.* at 33:24–34:6. The Court stated: "[T]o the extent I haven't already directed you to do so, [counsel for Defendants], answer that interrogatory." *Id.* at 34:7–8.

Defendants have attached their eighth supplemental interrogatory responses, which are dated January 18, 2024. Doc. 284-4. Their supplemental response to Interrogatory No. 1 states:

> After a reasonable and thorough search for information in Defendants' possession, custody, or control in locations where the requested information is most likely to be found:
>
> Subject to and without waiving the foregoing General and Specific Objections, and to the extent this request is understood, Defendants direct [Amimon] to Defendants documents Bates labeled DEFS00965943 - DEFS00966343.
>
> EC Pro does not deal in [MOMA] or Vaxis products as identified.
>
> Defendants have also previously answered Interrogatory No. 1.

*Id.* at 5–6.

Defendants argue that this response complies with Rule 33(d)(1). Doc. 283 at 3. Under that rule, "if the burden of deriving or ascertaining the answer [to an interrogatory] will be substantially the same for either party, the responding party may answer by . . . specifying the records that must be reviewed." Fed. R. Civ. P. 33(d)(1). The responding party must provide "sufficient detail to enable the interrogating party to locate and identify [the records] as readily as the responding party could." *Id.* "The party invoking Rule 33(d) must establish that the burden is substantially the same." *BBAM Aircraft Mgmt. LP v. Babcock & Brown LLC*, No. 20 Civ. 1056 (OAW), 2024 WL 1270666, at *6 (D. Conn. Mar. 25, 2024).

At the September 2023 conference, the Court directed Defendants to answer the interrogatory but did not expressly order a narrative response rather than a reference to documents. Doc. 253 at 34:7–8. The Court therefore cannot conclude that Defendants committed a discovery violation by producing the supplemental response identifying a range of documents. At the same time, the Court will exercise its discretion to order Defendants to now provide a narrative response. *See Moog Inc. v. Skyryse, Inc.*, No. 22 Civ. 187 (LJV) (JJM), 2022 WL 16852364, at *3 (W.D.N.Y. July 22, 2022) (explaining that court would require plaintiff to provide narrative response to interrogatory instead of solely invoking Rule 33(d)). Defendants must provide a complete narrative response to Interrogatory No. 1—rather than merely a range of documents—by August 15, 2024. In addition, Defendants must determine whether, based on that answer, they need to

16

supplement any other interrogatory responses or requests for production. Defendants also must provide any supplemental responses by August 15, 2024. If Defendants fail to do so, the Court may impose more severe sanctions. *Cf. Garcia v. AKR Corp.*, No. 11 Civ. 6184 (RRM), 2012 WL 3746265, at *2 (E.D.N.Y. Aug. 28, 2012) (awarding fees and directing defendants to serve signed responses to interrogatories or face harsher sanctions).

### C. Defendants' Requests

Finally, continuing what has become an unfortunate pattern, Defendants tack on to the conclusion of their brief multiple requests for sanctions of their own, without any corresponding explanation or legal justification. Doc. 283 at 13–14. Defendants first assert that Amimon should be sanctioned for bringing a "frivolous motion." *Id.* at 14. This request is baseless. As the discussion above illustrates, Amimon's motion—which the Court grants in part—is not at all frivolous. Defendants' request for sanctions is therefore DENIED.

Remarkably, Defendants also "ask the Court to grant an adverse inference to [Amimon's] trade secret claims." *Id.* This request comprises a single throwaway sentence at the end of Defendants' brief. *Id.* Defendants do not trouble themselves to elaborate on why an adverse inference would possibly be warranted, much less what kind of adverse inference they seek. Needless to say, this request is also baseless and is DENIED.

This is not the only occasion that Defendants have wasted the Court's time with a patently meritless request for sanctions. *See, e.g.*, Docs. 212, 225, 235; *cf.* Doc. 333 at 32:19–34:18 (Defendants suggesting that they would cross-move for spoliation sanctions, which they declined to do only after the Court stated that such a motion "doesn't appear to me to make any sense" and advised counsel to "consider seriously whether you want to make that motion"). The Court's patience has run out. Defendants are admonished that future requests along these lines—that is, requests for sanctions that are completely

17

unwarranted and unsupported—will result in sanctions against Defendants. *See Optigen, LLC v. Animal Genetics, Inc.*, No. 10 Civ. 940 (FJS) (DEP), 2011 WL 13234395, at *7 (N.D.N.Y. May 23, 2011) ("Defendant's repeated requests for sanctions are themselves sanctionable.").

### IV.   CONCLUSION

For the foregoing reasons, Amimon's motion for sanctions is GRANTED IN PART and DENIED IN PART. Amimon's request for evidentiary sanctions is denied. But Amimon is entitled to certain attorney fees and costs, as set out above. Amimon shall submit its fee application by August 8, 2024, and Defendants shall submit any objections by August 15, 2024.

Furthermore, Defendants must represent by August 8, 2024, whether they have additional Vaxis or MOMA documents and must describe the search process they have undertaken to locate such documents. Defendants also must provide a narrative response to Interrogatory No. 1 and any required supplemental responses by August 15, 2024.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 280.

It is SO ORDERED.

Dated:   July 25, 2024
         New York, New York

                                                 _____
                                                 EDGARDO RAMOS, U.S.D.J.