UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TERADEK LLC,

                          Plaintiffs,

           – against –

SHENZHEN HOLLYLAND TECH CO. LTD,
*and* EC PRO VIDEO SYSTEMS,

                          Defendants.

**OPINION & ORDER**

20 Civ. 9170 (ER)

Ramos, D.J.:

        Teradek LLC ("Teradek")[1] brought this suit against Shenzhen Hollyland Tech Co.

("Hollyland") and EC Pro Video Systems ("EC Pro") (collectively, "Defendants") in

November 2020.  Doc. 1.  Teradek alleged trade secret misappropriation under federal

and state law, copyright infringement, and unfair competition against both defendants.

*Id.*; Doc. 37 ¶¶ 41–87.  In short, Teradek contends that Defendants engaged in various

efforts to unlawfully take Teradek's video transmission technologies and to use them as

their own.  *See id.* ¶¶ 11, 20–26.

        This case has been riddled by discovery disputes, the latest of which this Court

resolved in an Opinion and Order issued on January 10, 2025.  *Amimon Inc. v. Shenzhen

Hollyland Tech Co.*, No. 20 Civ. 9170 (ER), 2025 WL 66633 (S.D.N.Y. Jan. 10, 2025)

(Doc. 363) (the "January 2025 Opinion").[2]  Now before the Court are Defendants' two

---

[1] The complaint was initially brought by Amimon Inc. and Amimon Ltd. (referred to collectively, in prior
opinions, as "Amimon" or "Plaintiff").  Doc. 1.  On May 12, 2025, Amimon submitted an unopposed
motion to substitute Teradek as Plaintiff in this case, stating that "as of April 2025, ownership of all
intellectual property at issue in this litigation and assignment of all rights, title, interest, and claims in, to,
and arising from this litigation, previously held by Amimon, were transferred and assigned to Teradek
LLC[.]"  Doc. 383 at 1.  The Court granted the request on May 14, 2025.  Doc. 385.  Although Amimon
served as Plaintiff in the proceedings up to May 14, including in the filings for the instant motions, the
Court uniformly refers to Plaintiff as Teradek in this Opinion and Order.

[2] In the January 2025 Opinion, the Court granted in part and denied in part each of:  Defendants' motion to
compel discovery, Teradek's motion for spoliation sanctions, and Teradek's motion for sanctions arising
from non-appearance at a disposition.  *See Amimon*, 2025 WL 66633, at *24–25.

motions for reconsideration of the January 2025 Opinion, as well as Teradek's fee application pursuant to the Court's order. For the reasons set forth below, Defendants' motions are DENIED, and Teradek's fee application is GRANTED.

## I.    BACKGROUND

The Court assumes familiarity with the factual allegations and procedural history, which have been discussed in five previous opinions. *Amimon*, 2025 WL 66633, at *1; *Amimon, Inc. v. Shenzhen Hollyland Tech Co.*, No. 20 Civ. 9170 (ER), 2024 WL 3862147, at *1 (S.D.N.Y. Aug. 19, 2024); *Amimon, Inc. v. Shenzhen Hollyland Tech Co.*, No. 20 Civ. 9170 (ER), 2024 WL 3534403, at *1–5 (S.D.N.Y. July 25, 2024); *Amimon, Inc. v. Shenzhen Hollyland Tech Co.*, No. 20 Civ. 9170 (ER), 2023 WL 2478159, at *1–5 (S.D.N.Y. Mar. 13, 2023); *Amimon, Inc. v. Shenzhen Hollyland Tech Co.*, No. 20 Civ. 9170 (ER), 2021 WL 5605258, at *1–2 (S.D.N.Y. Nov. 30, 2021). The relevant details are reproduced here for convenience.

### A.  Factual Overview

#### 1.  *The Underlying Dispute*

Teradek develops technology that enables wireless video streaming. *Amimon*, 2024 WL 3534403, at *1. Teradek develops both the hardware, such as transmitters and receivers, and the software for these products, which includes Teradek's "MAC Source Code" (the "Source Code"). *Id.* After the Source Code is produced, it is compiled into a binary version of the software that Teradek places in its chipsets, within transmitters and receivers. *Id.* Additionally, Teradek uses a proprietary key (the "Encryption Key") to encrypt its binary files. *Amimon*, 2023 WL 2478159, at *2.

Teradek and Hollyland are competitors. *Amimon*, 2024 WL 3534403, at *1. Hollyland is a Chinese corporation that develops and sells video technology. *Id.* EC Pro is Hollyland's U.S. distributor and exclusive service center. *Id.*

Before this lawsuit began, Teradek learned that Hollyland products for sale in the United States contained certain representations about their transmission capacities.  *Id.*  Teradek obtained several Hollyland products and examined their chipsets.  *Id.*  It discovered that a Hollyland product contained one of Teradek's chipsets.  *Id.*  According to Teradek, the code on the Hollyland product's chipset was almost an identical match to Teradek's code but had been modified slightly.  *Id.*  Teradek had never provided its chipsets or source code to Hollyland or EC Pro.  *Id.*  Teradek concluded that the Hollyland products contained unauthorized software derived from misappropriated MAC Source Code.  *Id.*

### B.  Teradek's Trade Secret, Source Code, and Encryption Key

On January 28, 2022, Defendants served discovery requests on Teradek.  *See* Doc. 272 at 1.  Interrogatory No. 1 requested:  "Please identify, with specificity (by product, file and line of code, where appropriate) all of the alleged trade secrets and any confidential or proprietary information that plaintiff alleges or contends Defendants misappropriated or slightly altered, including but not limited to as alleged in ¶ 22, of the Complaint."  *Id.*  On February 28, 2022, Teradek answered:  "Plaintiffs state that the trade secrets and confidential or proprietary information Defendants misappropriated include Plaintiffs' source code Version: 4_x_24_9_Build 1057 which is registered with the United States Copyright Office at Registration No. TX0008882781, any binary created therefrom, or any derivative thereto."  *Id.*

On October 30, 2023, Defendants' expert conducted a software inspection at the New York City office of Teradek's counsel pursuant to the Protective Order in this matter.  Doc. 272 at 1.  According to Teradek, the materials made available for that inspection consisted of:

> Plaintiffs' trade secret binary file created from Plaintiffs' source code Version: 4_x_24_9_Build 1057, as well as binary files from exemplary Accused Products manufactured by Hollyland . . . . The materials made available for inspection were the same materials analyzed to determine that

> the Hollyland-manufactured products containing [Teradek] Chipsets contain binary files showing the hallmark signs of being derived from Plaintiffs' source code Version: 4_x_24_9_Build 1057, but notably exhibit differences which underscore the binary files are derivative source code which has been modified and manipulated.

*Id.* at 1–2.  On October 31, 2023, Defendants filed a letter requesting leave to file a motion for contempt.  Doc. 269.  Defendants complained that they had been provided only with binary code, which is unreadable to humans, and not with Teradek's Source Code or Encryption Key.  *Id.*  Teradek responded that, "the only source code materials relevant to the claims and defenses in this litigation are those portions of Plaintiffs' trade secrets contained in its binary file derived from Plaintiffs' source code Version: 4_x_24_9_Build 1057, the US Copyright deposit for TX 8-882-781, and the binary files from the Accused Products."  Doc. 272 at 2.

At its November 16, 2023 conference, the Court asked Teradek to confirm whether it "provided to [Defendants] or made available to them all of the documents that plaintiffs relied on in conducting their analysis that infringement occurred."  Doc. 275 at 32:5–7.  Teradek answered in the affirmative.  *Id.* at 32:8.  The Court also asked why Teradek had not provided Defendants with its Source Code, given Defendants only had access to 50 pages—which they acquired on their own from the Copyright Office—out of roughly 6,000 pages of Source Code.  *Id.* at 36:5–14.  Teradek responded that the Source Code is the "crown jewels" of its company, and in any event, Defendants have been adamant "that they have no source code of their own."  *Id.* at 36:15–20, 37:11–12.  Therefore, Teradek explained, it would not be possible to compare Teradek's Source Code with Defendants' anyway.  *Id.* at 36:24–37:5.  Teradek also reiterated:  "What's relevant is the derivative binary, which we identified as our trade secret in this case and which we provided to them.  We provided their own binary output back to them for comparison against ours.  All of that was provided to them on the 30th of October."  *Id.* at 37:18–22.  Teradek noted it provided the binary in viewable form, such that

Defendants' expert did not have to decrypt it to analyze and compare it.  *See id.* at 41:7–

12.  The Court ultimately declined to grant leave for Defendants to file their motion for

contempt, and it directed the parties to engage in additional discussions.  *Id.* 42:14–21.

The Court also instructed Defendants:

> I will leave it up to you, if you believe that an additional motion to compel
> is appropriate, but that motion has to be based on specific requests where
> plaintiffs determined that they would not turn over the materials, that the
> materials exist and that, for whatever reason, they have determined that it
> should not be turned over.  OK?

*Id.* 47:1–6.

The parties met and conferred on November 29, 2023.  Doc. 309 at 1.  In a follow-

up email to Defendants on December 1, 2023, Teradek reiterated its belief that

Defendants had "failed to articulate any factual or legal basis for discovering Plaintiffs'

source code[.]"  Doc. 309-1 at ECF 3.  Nonetheless, Teradek offered "to produce a subset

of the source code in the interest of avoiding motion practice on this issue (unnecessarily

increasing the parties litigation costs) and avoid the need for Court intervention

(unnecessarily resulting in expenditure of Court resources)."  *Id.*  Teradek added:

> To the extent Defendants continue to demand the entirety of Plaintiffs'
> source code, Defendants may advise the Court that "Plaintiffs are opposed
> to Defendants' motion to compel Plaintiffs' production of the entirety of
> Plaintiffs' source code Version: 4_x_24_9_Build 1057."

*Id.* at ECF 4.  In accordance with the offer to produce a subset of the Source Code, on

December 13, 2023, "[Teradek] produced its copyrighted source code Version:

4_x_24_9_Build 1057, with only very limited redactions of highly sensitive lines of

code."  Doc. 309 at 5.

On March 21, 2024, Defendants filed a motion to compel Teradek to identify its

trade secret, produce its Source Code and Encryption Key, and produce other discovery.

Doc. 299.  Teradek filed its opposition to the motion on April 12.  Doc. 309.  In the

opposition, Teradek stated that Defendants had not even reviewed the Source Code

materials that Teradek had provided on December 13, 2023.  *Id.* at 3.  Teradek also stated

that, at Defendants' March 26, 2024 deposition of Rafi Agiv—formerly Teradek's Software Team Leader and Director of Software Development, who "wrote substantial portions of [Teradek's] source code and analyzed the infringing Hollyland products to support the allegations within [Teradek's] [First Amended Complaint]"—Defendants "asked no questions related to [Teradek's] code or its analysis of Hollyland Products." *Id.* at 6 and n.2.  Defendants did not contest either of these statements in their reply, which they filed on April 19.  Doc. 314.

On May 6, 2024, Defendants finally requested to inspect the Source Code that Teradek had provided on December 13, 2023.  *See* Doc. 322 ¶ 6.  Defendants performed the Source Code inspection on May 16, 2024.  *Id.* ¶ 7.

On May 17, 2024, with their motion to compel pending, Defendants requested that fact discovery be extended and Teradek be forced to produce its Source Code.  Doc. 321.  The Court discussed this request at a June 5, 2024 conference.  *See* Doc 333.  There, Defendants argued that Teradek produced the Source Code with numerous redactions, and in a way that had "no organization at all" and did not allow Defendants to perform "an abstraction filtration test or any test on the copyright work."  *Id.* at 9:9–11, 8:17–20.  As to the redactions, Teradek explained that, in the approximately 98% of the source code that it produced on December 13, 2023, it redacted "[l]ess than 2 percent of the total pages," meaning the redacted portions comprised "less than probably one percent of the information . . . out of the entirety of the source code that was produced."  *Id.* at 6:16–23.  As to the organization of the software, Teradek confirmed there was "no shuffling" of the files, and the way the Source Code was produced was "how it's kept.  It's how it's compiled.  It's how it's run."  *Id.* at 12:10–13.  Teradek also reiterated its belief from the November 16, 2023 conference that the Source Code was of no use to Defendants without any source code of their own to compare it with, noting:

> Why they need the source code I can't understand, your Honor, and this
> goes to the spoliation issue.  I haven't heard any cognizable reason from

> them why they need to inspect the source code other than, we want to run it
> through an open source search engine on the internet to find if there's open
> source code. Complete fishing expedition.

*Id.* at 10:5–11.[3]  In any event, Teradek stated, "we've given them encrypted binaries;
we've given them unencrypted binaries; we've given them the source code. They have all
the tools that they need to do the analysis that was done to determine that they were
infringing our trade secrets." *Id.* at 11:13–17.

In the January 2025 Opinion, the Court granted in part and denied in part
Defendants' motion to compel. While the Court compelled Teradek to produce a printout
from an October 30, 2023 inspection, it declined to compel Teradek to (1) produce its
Source Code and its full copyrighted work, (2) produce its Encryption Key, or (3)
"immediately identify" its trade secrets and related documents and information. *Amimon*,
2025 WL 66633, at *24.

### C. Destruction of Chipsets and Electronic Data

#### 1. *The Beijing IPC Case*

On June 26, 2019, prior to the start of the instant civil action, Teradek initiated a
copyright infringement claim against Hollyland and another defendant, Beijing Huacheng
Yuzhe Trading Co., Ltd., in the Beijing Intellectual Property Court ("Beijing IPC").
Docs. 336 at 1; 345-1; 344 ¶ 1. In its complaint, Teradek requested various forms of
relief from the Beijing IPC, including the following:

> To order both Defendants to forthwith remove the unauthorized MAC
> software preinstalled in all of their media, chips, motherboards, "MOMA
> Legend 2000" and other products in their inventory, *or* destroy all of their
> chips, motherboards, "MOMA Legend 2000" and other products
> preinstalled with the unauthorized MAC software in their inventory[.]

---

[3] Whereas in the November 16, 2023 hearing, Teradek had expressed skepticism over Defendants'
insistence that they had none of their own source code, in the June 5, 2024 hearing, Teradek expressed its
belief that Defendants spoliated that evidence. Doc. 333 at 10:5–11. Teradek's request for leave to file a
motion for sanctions based on Hollyland's spoliation of evidence, Doc. 324, was also discussed, and
granted, at the June 5, 2024 conference. Teradek filed its motion for spoliation sanctions on June 26, 2024.
Doc. 335.

Doc. 345-1 at 1 (emphasis added).  On December 28, 2021, the Beijing IPC entered

judgment against the defendants, finding they engaged in infringement "by producing and

selling products containing software that is highly similar to the MAC software without

permission of the right holder, [Teradek]."  Doc. 336 at 1; 344 ¶ 5.  The Beijing IPC

granted several forms of relief; in part, it ordered Hollyland to cease its infringement,

issue a public apology, compensate Teradek for financial loss, and compensate Teradek

for reasonable expenses.  *Id.* at 2; Doc. 336-1 at 10.[4]  The Beijing IPC declined, however,

to order Hollyland to "destroy the products containing the infringing software," as

Plaintiffs had proposed, explaining that "the responsibility to stop the rancidity [was]

sufficient to protect [Teradek's rights]."  Docs. 336 at 2, 336-1 at 9.  Hollyland appealed

the judgment of the Beijing IPC on January 12, 2022.  Doc. 344 ¶ 6.

Defendants report in their instant motion for reconsideration of the Court's

January 2025 Opinion that, on December 24, 2024, the Supreme People's Court of the

People's Republic of China reversed the Beijing IPC's decision entirely on appeal.  *See*

Doc. 365 at 2, 3.

### 2. *The Destruction of Evidence*

On November 2, 2020, while the Beijing IPC action was still being litigated,

Teradek filed the instant civil action in the U.S., alleging similar claims.  *See* Docs. 1, 11.

On January 14, 2022, Hollyland answered Teradek's first amended complaint.  *See* Docs.

89, 91 at 37.  Teradek served its first interrogatories and requests for production on

January 28, 2022.  *See* Doc. 178 at 2.  These included requests for communications,

documents, and things related to Teradek's chipsets and Source Code.  *See* Doc. 336 at 3.

"In January or early February 2022," then-unbeknownst to Teradek, "Hollyland's

Senior Executive in charge of its Strategy Department, Vincent Ma, directed employees

---

[4] In the Beijing IPC Judgment, Hollyland is referred to as "Shenzhen Haoyiyuan Technology Co. Ltd."
Doc. 336-1.

to destroy materials in Hollyland's possession relating to [Teradek]'s technologies," in particular, "the technical information file, the technology file, the WHDI development kit, the test tooling and test software, the Mac firmware" (hereinafter, the "Spoliated Materials").  Doc. 336 at 3; *see also* Doc. 344 ¶ 6.  "[A]round the same time it was destroying the Spoliated Material[s], [Hollyland] also destroyed all chipsets it had in its possession which contained [Teradek's] technologies" (hereinafter, the "Teradek Chipsets").  Doc. 336 at 6.

Hollyland alleges that Chinese Counsel advised Hollyland to destroy materials "to comply with the judgment in the Beijing Intellectual Property Court."  Doc. 345 ¶ 7. Hollyland did not ask Teradek for permission to destroy any materials, nor did it provide notice to Teradek that it had done so.  *See* Doc. 336 at 3.

    *3.  Protracted Discovery Disputes*

On February 28, 2022, Hollyland responded to Teradek's first discovery requests. *Id.* at 6.  In its responses, it denied the existence of several categories of requested documents, and it did not produce any documents.  *Id.* at 6–7.  For example, Request No. 13 requested "[d]ocuments and things that refer, relate to, or evidence the uncompiled and compiled Source Code for software or firmware installed and/or operating on the [Teradek] Chipset included in the [Hollyland] devices."  Doc. 336 at 3.  Hollyland stated in its response, "[T]he Request cannot be complied with since Defendants have no such Source Code documents and things."  *Id.* at 4.

Teradek learned years later that Hollyland had "had the exact documents and things [Teradek] has been seeking to obtain since January 2022," but "Hollyland deliberately destroyed those Spoliated Materials at the same moment in time it [was] being asked to produce them in this litigation."  *Id.* at 5.  In Hollyland's February 28, 2022 responses, it did not provide any disclosure of destroyed, transferred, or otherwise disposed-of documents; Hollyland "instead remained silent" in response to Teradek's

instructions that such disclosures be provided.[5]  *Id.* at 4.

The parties thereafter engaged in almost a year of back-and-forth on Hollyland's purportedly deficient responses to Teradek's January 28, 2022 discovery requests, and on February 10, 2023, Teradek moved to compel Defendants to provide complete responses. Doc. 177.  The Court granted the motion on March 13, 2023.  *Amimon*, 2023 WL 2478159, at *21.  In doing so, the Court explained:  "The record makes clear that Defendants have improperly failed to timely produce documents pursuant to the provisions of Rule 34, despite the Court's entry of a protective order that Defendants requested prior to providing complete responses."  *Id.*  The Court also granted Teradek's request for costs and fees associated with the motion.  *Id.*  Thereafter, Hollyland "continued to assert, without explanation, that the documents and things responsive to these requests [did] not exist and [were] not in Hollyland's possession."  Doc. 336 at 4. On April 7, 2023, Teradek asserted that Defendants were failing to comply with the Court's motion to compel order.  Doc. 200.  The Court held a conference on April 12, 2023, and admonished the parties to abide by the rules of discovery.

In June 2023, Teradek sought leave to move for contempt.  Doc. 234.[6]  Teradek explained:

> Defendants have remained steadfast in their refusal to supplement even basic responses to certain interrogatories (*e.g.*, failing to identify all products manufactured by Hollyland, including for third-parties, as requested by Interrogatory No. 1), to provide documents evidencing or sufficient to calculate Hollyland's costs to manufacture each of the offending product models, to provide information identifying

---

[5] Specifically, Teradek's discovery requested that "[i]f a document requested was, but is no longer, in the possession, custody, or control of [Hollyland], [Hollyland] should state whether the document: (1) is missing or lost; (2) has been destroyed; (3) has been transferred, voluntarily or involuntarily, to others; or (4) has otherwise been disposed of.  For each instance, explain the circumstances surrounding such disposition, the date or approximate date of such disposition, and the names and residences and business addresses of those persons with knowledge of such circumstances."  Doc. 336 at 4 (alterations in original).

[6] While Teradek initially styled its request as a "motion for contempt," *see, e.g.*, Doc. 234, the motion it ultimately filed made clear that Teradek sought evidentiary sanctions and attorney fees pursuant to Federal Rule of Civil Procedure 37, Doc. 281 at 14.

> offending products manufactured for third-parties, and to provide threshold
> financial data related to the offending products to allow [Teradek] to
> calculate damages from sales of the offending products—all of which
> documents and information were compelled by the Court's Order.

*Id.* at 3.  Defendants again disagreed with Teradek's account of events, asserting that they

had produced "all the documents" in their possession.  Doc. 235 at 3.

The Court held additional discovery conferences on July 12, September 6, and

November 16, 2023.  At the July 12, 2023 conference, in discussing the parties' dispute

over whether Defendants had indeed produced certain documents that they claimed to

have produced, the Court instructed Defendants to identify the documents in question "by

discrete Bates numbers or Bates ranges."  Doc. 242 at 16:19–23.  At the November 16,

2023 conference, Teradek argued that it was still missing full categories of documents.

Doc. 275 at 13:19–20, 14:6.  The Court ultimately instructed Defendants:

> I said this before, turn those documents over.
>
> Well, here's the thing.  They've asked for leave to file a motion to hold you
> in contempt.  I'm going to let them file the motion, but you can avoid it.
> Right?  This is now the third time that we're here talking about the
> documents, the Vaxis documents, the MOMA documents, the [Cine Gear]
> documents.  I believe I've told you in no uncertain terms in the past you
> have to turn them over.  I don't care where they're sold.  I don't care who
> they're sold to.  I don't care.  Turn them over.

*Id.* at 22:14–23.  Additionally, in response to counsel for Defendants' assertion that he did

not "see the relevance," of certain discovery requests, *id.* at 24:21, the Court repeated:

"Absolutely it is relevant.  I've found that it is relevant.  I've determined that it is

relevant.  I've told you to turn over the documents.  I'm telling you now for the third or

fourth time to turn over the documents," *id.* at 24:25–25:3.  Defendants promised to "do

an extensive search" and "turn over what we have."  *Id.* at 22:25–23:1; *see also id.* at

25:5–6.  The Court ordered Defendants to produce the documents within one month and

stated that Teradek could move for contempt by December 29, 2023, if necessary.  *Id.* at

25:7–26:17.

On December 29, 2023, Teradek filed a motion for sanctions based on Defendants' failure to comply with the Court's discovery orders.  Doc. 280.  Teradek asserted that "[d]espite the expiration of the deadline, Defendants failed to . . . produce all responsive documents to those requests[.]"  Doc. 281 at 6–7.  On July 25, 2024, the Court granted in part and denied in part Teradek's motion.  *Amimon*, 2024 WL 3534403.  The Court denied the request for evidentiary sanctions but concluded that Teradek was entitled to reasonable attorney fees and costs in connection with its efforts to obtain certain documents from Defendants.  *Id.* at *10.  As part of its relief, the Court directed Defendants to "represent by August 8, 2024, whether they have additional . . . documents and must describe the search process they have undertaken to locate such documents." *Id.* at *10.

### 4.  *Revelation of the Destruction of Evidence*

On May 1, 2024, Teradek conducted a Rule 30(b)(6) deposition of Hollyland. Doc. 336 at 8.  At that deposition, Teradek "learned for the first time" that "Hollyland not only had the exact documents and things [Teradek] has been seeking to obtain since January 2022, but that Hollyland deliberately destroyed those Spoliated Materials at the same moment in time it [was] being asked to produce them in this litigation."  *Id.* at 5. Hollyland also testified at the deposition that "around the same time it was destroying the Spoliated Material, it also destroyed all chipsets it had in its possession which contained [Teradek's] technologies," the Teradek Chipsets.  *Id.* at 6.

### 5.  *Motion for Spoliation Sanctions*

On June 26, 2024, Teradek filed a motion for sanctions arising from Hollyland's spoliation of software and hardware materials.  Doc. 335.  In the January 2025 Opinion, this Court granted the motion in part and denied it in part.  It granted Teradek's requests for monetary sanctions and for adverse inferences, stating that the Court will permit a jury to draw the adverse inference that the missing evidence would have been favorable

to Teradek.  *Amimon*, 2025 WL 66633, at *19.  However, the Court denied Teradek's request that it adopt certain factual findings as part of its adverse inference instruction, and it additionally denied Teradek's request for terminating sanctions based on Hollyland's spoliation of evidence.  *Id.*; *see also id.* at n.13.  Finally, in order to determine the amount of spoliation sanctions to be imposed on Hollyland, the Court directed Teradek to "submit its fee application and corresponding billing records" by January 24, 2025.  *Id.* at *25.

### D.  Procedural History

Teradek brought this action in November 2020.  Docs. 1, 11.  Defendants filed motions to dismiss, which the Court denied in November 2021.  *Amimon*, 2021 WL 5605258.  On March 1, 2022, Defendants asserted numerous counterclaims.  Doc. 111.  Teradek filed a motion to dismiss these counterclaims, which the Court granted on March 13, 2023.  Doc. 187.

The parties engaged in numerous discovery disputes in 2023 and 2024.  On March 21, 2024, Defendants filed a motion to compel Teradek to produce its Source Code, Encryption Key, and other discovery.  Doc. 299.  On June 26, 2024, Teradek filed a motion for sanctions arising from Hollyland's spoliation of software and hardware materials, Doc. 335, as well as a motion for sanctions based on Hollyland's failure to produce its sales director for his deposition, Doc. 337.  On January 10, 2025, this Court granted in part and denied in part each of those motions.  *Amimon*, 2025 WL 66633.

On January 24, 2025, Defendants filed the two instant motions for reconsideration:  of the Court's partial grant of Teradek's motion for spoliation sanctions, and of its partial denial of Defendants' motion to compel.  Docs. 364, 366, respectively.  That same day, Teradek filed its fee application and corresponding billing records, pursuant to the Court's order regarding spoliation sanctions.  Docs. 368, 369.

13

## II.    MOTIONS FOR RECONSIDERATION

### A.  Legal Standard

The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted).  "A motion for reconsideration should be granted only when the [party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citation and internal quotation marks omitted).  It is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'" *Analytical Surveys*, 684 F.3d at 52 (citation omitted).  The decision to grant or deny the motion for reconsideration is within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

### B.  Discussion

#### 1.  *Defendants' Motion to Compel*

In its January 2025 Opinion, the Court found no basis to compel Teradek to produce its Source Code because Defendants did not even acknowledge in their moving papers that Teradek had made 98% of it available for inspection, and they did not inspect that Source Code until after all briefing on the motion to compel was complete. *Amimon*, 2025 WL 66633, at *12.  The Court thus found that Defendants had flagrantly failed to show Teradek "determined that they would not turn over" the Source Code in response to Defendants' "specific requests," as required by the Court and Rule 37(a)(3)(B). *Id.*

In their motion to reconsider this aspect of the Court's January 2025 Opinion, Defendants argue that the Court made three errors:  (1) it erroneously stated that, at

14

Defendants' March 26, 2024 deposition of an Teradek executive, Defendants "asked no questions related to [Teradek's] code or its analysis of Hollyland Products"; (2) it overlooked that Teradek "effectively engineered the need" for Defendants to file a motion to compel, by telling Defendants that it would not produce the Source Code in its entirety absent a court order; and (3) it failed to understand the "technical reality" that even 2% of the Source Code, which Teradek withheld through redactions, is significant because it "could theoretically encompass the very modifications at the heart of the infringement allegations." Doc. 367 at 3, 5, 8. Defendants claim that "[t]hese overlooked factual matters, if properly considered, would likely have materially altered the Court's analysis under the controlling standard requiring defendants to show specific instances where production was improperly withheld." *Id.* at 9.

However, it is Defendants—not the Court—that "overlooked" these matters, having failed to raise them or fully litigate them in their motion to compel, despite ample opportunity to do so. Defendants did not contest Teradek's characterization of Defendants' questioning at the deposition, which Teradek raised in its opposition to the motion to compel.[7] They also did not argue, in their moving papers or in reply, that Teradek "engineered the need" for them to move to compel, even after Teradek submitted—as an exhibit to its opposition—a copy of its December 1, 2023 email stating that if Defendants continued to demand the code in its entirety, they could "advise the Court" of Teradek's opposition thereto.[8] Doc. 309-1 at ECF 4. Finally, although Defendants had represented to Teradek that they sought the full Source Code, and they submitted an expert declaration to the Court that expressed the general utility of assessing

---

[7] The Court quoted Teradek's statement that Defendants "asked no questions related to [Teradek's] code or its analysis of Hollyland Products," in the facts section of its January 2025 Opinion, because Defendants did not contest that assertion. *See Amimon*, 2025 WL 66633, at *4.

[8] Defendants "advise[d] the Court" in their moving papers that Plaintiffs were "opposed to Defendants' motion to compel production of Plaintiffs' source code," Doc. 300 at 8, notably omitting that Teradek expressed its opposition only to producing the *entirety* of the Source Code. *See* Doc. 309-1 at ECF 4.

the Source Code in its entirety, [9] they did not specifically argue the potential significance of the 2% of the Source Code that was redacted because they failed to even acknowledge until their reply that they had received any Source Code whatsoever.  In reply, after admitting that Teradek had in fact produced some of the Source Code, Defendants clarified that they would not settle for anything short of the *entire* Source Code, explaining that "a subset of the source code is not adequate" based on the "technical reasoning" provided in the expert report.  *See* Doc. 314 at 2, 3.

  None of these procedural and technical arguments raised in the motion for reconsideration stem from new facts or law unavailable to Defendants prior to their briefing of the motion to compel, and Defendants cannot now take a "second bite at the apple" by relitigating their unsuccessful motion.  *Analytical Surveys*, 684 F.3d at 52 (citation omitted); *see also Navigators Insurance Co. v. Goyard, Inc.*, 623 F. Supp. 3d 220, 222 (S.D.N.Y. 2022) (citation omitted) ("[A] party is 'barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so.'"); *Henderson v. Metropolitan Bank & Trust Co.*, 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007) (citations omitted) ("A court should deny a motion for reconsideration when the movant 'seeks solely to relitigate an issue already decided.'  The restrictive application of Local Rule 6.3 helps 'to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'").  In any event, these arguments would not have changed the fact that Defendants failed to acknowledge—let alone review—the 98% of the Source Code that

---

[9] Defendants submitted an expert declaration by Jennifer Lansden, in which Ms. Lansden stated, in general terms, that one would need to access a source code in its entirety to perform a "true comparison" between it and the allegedly infringing software.  Doc. 301-1.  Still, there was no acknowledgment that 98% of the Source Code had already been made available for inspection.  In fact, the Source Code was not included in Ms. Lansden inspection.  *See id.* ¶¶ 7, 32–33.

had been made available, which was at the core of the Court's denial of the motion to compel.

Defendants have therefore failed to identify any "clear error" or "manifest injustice" to be rectified with regards to the January 2025 Opinion.

### 2. Teradek's Motion for Spoliation Sanctions

In the January 2025 Opinion, the Court found Hollyland highly culpable of its willful destruction of both the Spoliated Evidence and the Teradek Chipsets. *Amimon*, 2025 WL 66633, at *18. The Court rejected Hollyland's claim that it was acting "at the behest" of Teradek in destroying the materials; in part, the Court relied on the fact that, although Teradek had proposed the destruction of certain materials as a potential form of relief in its Beijing pleading, the Beijing IPC explicitly declined to order any such destruction in its December 2021 judgment against Hollyland.

In the instant motion to reconsider, Defendants argue that the Court relied "on a now-reversed foreign judgment," because the Beijing IPC's decision was reversed on appeal on December 24, 2024. Doc. 365 at 3, 7. Defendants argue that the Beijing IPC's substantive findings contradict Teradek's theories and claims in this case. In doing so, Defendants digress into a discussion of statements made at the Rule 30(b)(6) deposition of Teradek, and attack Teradek's pleadings, evidence, and discovery tactics. *See, e.g.*, *id.* at 4–6; Doc. 381 at 2–4, 6–7. None of these arguments bear on the Court's bases for granting Teradek's motion for spoliation sanctions.

In the January 2025 Opinion, the Court discussed the Beijing IPC's order only to note that it did not direct Hollyland to destroy any evidence, contrary to Hollyland's purported defense. The Court did not rely on any substantive findings made by the Beijing IPC. Therefore, no substantive reversal on appeal changes this Court's determination that Hollyland's conceded destruction of evidence was not justified by the Beijing IPC's order. Nor has this Court made any "adverse credibility determinations"

based on the Beijing IPC's order, as Defendants suggest.   Doc. 365 at 7..[10]   Therefore, there is no intervening change of controlling law or new evidence that urges a different conclusion than the one already reached.   *Kolel Beth Yechiel Mechil of Tartikov, Inc.*, 729 F.3d at 104.

There is also no "clear error" or "manifest injustice" stemming from the Court's imposition of monetary sanctions and an adverse inference for Hollyland's spoliation of evidence.   *Id.*   Defendants argue that, because the Beijing IPC's order has been reversed, "the Court should reassess its credibility determinations absent the prejudicial effect of the now vacated foreign judgment, viewing Defendants' conduct through a neutral lens as required by fundamental principles of due process and fairness in these proceedings."   *Id.* at 7.   However, as previously discussed, the Court has not relied on any merit determinations made by the Beijing IPC, much less abdicated its responsibility to evaluate the parties' applications with impartiality.

Defendants additionally state that the Court's authority to impose sanctions "cannot be wielded to circumvent plaintiffs' fundamental burden of proving their claims by a preponderance of the evidence."   Doc. 365 at 8.   Defendants' suggestion that the Court has circumvented any burden is incorrect.   In its January 2025 Opinion, the Court permitted an adverse inference that the missing—spoliated—evidence would have been favorable to Teradek.   *Amimon*, 2025 WL 66633, at *19.   The Court declined to adopt Teradek's proposed factual findings as part of its adverse inference instruction, explaining that it will simply "allow the jury to draw an adverse inference against defendant after hearing evidence of the destruction of the documents."   *Amimon*, 2025 WL 66633, at *19 (quoting *Golia v. Leslie Fay Co.*, No. 01 Civ. 1111 (GEL), 2003 WL 21878788, at *11

---

[10] Defendants argue that Plaintiffs cited to substantive determinations made by the Beijing IPC in their April 26, 2022 motion for a preliminary injunction; however, this Court resolved that motion on March 13, 2023, Doc. 187, and therefore any arguments made therein are wholly inapposite to the instant motion. *See, e.g.*, Doc. 381 at 5.

(S.D.N.Y. Aug. 7, 2003) (internal citation omitted) (explaining that this sanction "serv[es] the functions of placing the 'risk of an erroneous judgment on the party that wrongfully created the risk,' and 'restoring the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence'")). The Court found this extreme sanction to be warranted based on Hollyland's conceded destruction of the evidence and its highly culpable mental state. Defendants have not identified any reason for a finding that the Court's determination was erroneous or unjust. Nor does the reversal of the Beijing IPC's finding on appeal affect the propriety of these sanctions, given that, as discussed, that reversal has no bearing on the substantive determinations made by this Court.

### 3. *Teradek's Fee Request*

In its opposition to Defendants' motions for reconsideration, Teradek requests that the Court award it fees expended in responding to Defendants' motions, which it argues are "facially frivolous." Doc. 373 at ECF 12.[11]

Defendants do not address this request in their reply, Doc. 381, and therefore the Court considers it unopposed.

The Court grants Teradek's request for fees.

## III.    TERADEK'S FEE APPLICATION FOR SPOLIATION SANCTIONS

In the January 2025 Opinion, the Court determined that it "will award [Teradek] reasonable attorney fees and costs in connection with its efforts to obtain the Spoliated Materials and [Teradek] Chipsets, to the extent not duplicative of the attorney fees and costs the Court awarded in its August 2024 opinion." *Amimon*, 2025 WL 66633, at *19.

---

[11] In a letter to Defendants on February 12, 2025, Teradek requested that Defendants withdraw their motions for reconsideration on the basis that they were frivolous, and it warned Defendants that it would seek fees if it was required to respond to the motions. Doc. 373 at ECF 12–13; *see* Docs. 373-1, 373-2.

Teradek seeks to recover a total fees and costs[12] award of $276,698.70, consisting of (1) $215,786.50 incurred in connection with the efforts to obtain the Spoliated Materials and Teradek Chipsets, (2) $37,489.80 incurred in briefing the motion for spoliation sanctions, and (3) $23,440.40 incurred in briefing the instant fee application. Doc. 368 at ECF 6, 7.

The only aspect of Teradek's fee application that Defendants dispute is Teradek's request for "compensation for 76.1 hours of document review time out of a claimed total of 125 hours." Doc. 375 at 8.[13] Teradek claims that out of the "over 125 hours" it spent reviewing Defendants' document production of about 33,000 documents, it spent 50 hours reviewing the approximately 10,000 relevant documents, and 76.1 hours reviewing the approximately 20,000 "highly technical materials unrelated to the subject matter of this litigation." Doc. 368 at ECF 2, 4, 6. Teradek explains that the 76.1 hours were not spent on "*routine* discovery review," but rather, that they would not have been expended absent Defendants' spoliative conduct. Doc. 382 at 5 (emphasis in original). Specifically, Teradek claims that this time spent was "not typical of document review in a normal dispute" because:

(1) the documents produced by Defendant were almost universally irrelevant, and

(2) the exact materials Plaintiff was seeking to discover within the voluminous production (materials . . . Defendant[s] [affirmatively represented] were within the production), were not actually included because there [sic] were destroyed a year earlier.

---

[12] Although Teradek states it "does not seek any costs through this Application," *Id.* at ECF 1, it elsewhere states it is seeking "fees and costs." *See e.g.*, *id.* at ECF 6.

[13] Defendants separately argue that the "Court should decline to impose monetary sanctions" altogether and "instead should set such sanctions at zero dollars ($0.00)," on grounds that imposing sanctions would be "manifestly unjust." Doc. 375 at 11. However, Defendants cannot now relitigate the Court's underlying determination that spoliation sanctions are warranted. Nor can Defendants make merits arguments and wield accusations wholly unrelated to the instant fee application, as they attempt to do throughout their opposition brief. *See* Doc. 375 at 1–8, 10–20.

Doc. 368 at ECF 4. Teradek explains that, after it conducted a "first-pass review of these documents," which suggested that the contents were not relevant to this litigation, Defendants nonetheless insisted that "all responsive documents" were within the production, and they repeatedly encouraged Teradek to continue looking for them. Doc. 382 at 6, 7.[14] As a result, Teradek "expended the additional 76.1 hours in excess of the 50 hours it would have otherwise undertaken" to review these documents, only to find out after the close of discovery, in May 2024, that the materials they were searching for had been destroyed as early as February 2022. *Id.* at 7; Doc. 368 at ECF 5.

Defendants counter that the approximately 20,000 documents which Teradek claims are highly technical and irrelevant were produced in response to Teradek's request for production No. 23, which sought "Documents sufficient to show alternative hardware, software, or firmware designs contemplated or used for each of the devices identified by Defendants in answer to Interrogatory No. 1." Doc. 375 at 9. However, Teradek replies, this argument directly contradicts Defendants' substantive response to Request No. 23, provided during discovery, in which Defendants "identified just 1,000 documents," not 20,000, as responsive to that particular request. Doc. 382 at 6.

Based on the parties' submissions, the Court finds Teradek's request for 76.1 hours of compensation for document review to be well-founded. Given the other aspects of Teradek's fee application are uncontested, the Court awards Teradek its requested fees and costs in their entirety.

---

[14] Teradek specifies that, "[e]ven after Plaintiff requested, and the Court instructed, that Defendant must not merely refer to Rule 33(d), but must specifically identify where within its production relevant and responsive documents are located, Defendant directed Plaintiff to the entire 900,000+ pages of production and remained adamant that 'all responsive documents' were within that production." Doc. 368 at ECF 5 n.6. Indeed, at a July 12, 2023 discovery conference, the Court instructed Defendants, at least as to certain documents, that it identify them "by discrete Bates numbers or Bates ranges." *See* Doc. 242 at 16:19–23.

**IV.    CONCLUSION**

For the foregoing reasons, the Court:

- DENIES Defendants' motions for reconsideration and grants Teradek's request for attorneys' fees incurred in responding to the motions for reconsideration.  Teradek is directed to file its fee application for fees in responding to the motions for reconsideration by May 29, 2025.

- GRANTS Teradek's fee application corresponding to spoliation sanctions.


It is SO ORDERED.


Dated:    May 22, 2025
          New York, New York

_____
          Edgardo Ramos, U.S.D.J.